[No. 11561.  Department Two.  March 27, 1914.]

HUGH FOX, *Respondent*, v. ELLIOTT McCORMICK, *Appellant*.[1]

CONTRACTS—CONSTRUCTION—UNAUTHORIZED SALE—RATIFICATION—RIGHTS OF PARTIES. Where defendant, the owner of an interest in timber licenses, sold half of his rights to plaintiff; and claiming that the sale was invalid, made a contract with one C, without whose financial assistance the title would have been lost, assuming to sell his whole interest to C., in consideration of a certain cash payment and monthly installments, C. to advance payments to protect the title and to share with defendant in the net profits, the plaintiff cannot ratify and adopt the contract with C. as to his half interest and claim the benefits of the contract without assuming his share of the burdens, viz: the loss of a proportionate part of the net profits.

Appeal from a judgment of the superior court for King county, Albertson, J., entered March 15, 1913, upon find-

[1]Reported in 139 Pac. 612.

ings in favor of the plaintiff, in an action for equitable re-
lief.  Affirmed in part and reversed in part.

*Hughes, McMicken, Dovell & Ramsey,* for appellant.
*Shepard & Burkheimer,* for respondent.

MORRIS, J.—It was sought in this action to determine
the respective interests of the parties in certain timber limits
or licenses, in British Columbia.  These timber limits were
located and the licenses obtained under a contract between
McCormick and one Bottum, whereby they agreed to an
equal division.  Fox claims under a contract made with
McCormick giving him one-half of McCormick's interest, or
one-fourth of the whole.  McCormick sought to avoid this
contract upon the ground of mental incapacity at the time
it was entered into.  Subsequent to the time when Fox claims
he made his contract with McCormick, a contract was en-
tered into between McCormick and Henry Carstens of Seattle,
whereby McCormick, under his claim that he was still the
owner of a half interest, sold that interest to Carstens for a
consideration of $1,000 cash and a further payment of $75
per month until the licenses were sold, and the payment by
Carstens of all necessary charges against the licenses.  It
was then provided that all these payments so made, plus in-
terest at six per cent per annum, including a commission
earned in the sale to Carstens, should be charged to the
gross proceeds arising from the sale of the licenses, and the
remainder divided equally between McCormick and Carstens.
Subsequently Carstens purchased Bottum's interest in the
licenses, thus giving him a three-fourths' interest.  Fox then
brought this action to establish his one-fourth interest under
his contract with McCormick, and the chief controversy has
been waged around this claim, McCormick seeking to estab-
lish, as above intimated, that, at the time he made the con-
tract with Fox, he was mentally incapable of entering into a
valid contract.

The lower court by its decree found the legal title to the licenses to be in Carstens, subject to the conditions of his contract with McCormick, which contract is fully sustained. It is further decreed that the contract between Fox and McCormick is a valid and binding agreement, McCormack's plea of mental incapacity being ruled on adversely. Carstens is then decreed as entitled to a lien for the advances made by him to the extent of $1,975, and for the further sum of $75 per month so long as he pay the same to McCormick, which payment is to be continued until notice is given by Fox to discontinue. This last provision is inserted because of a stipulation in open court made by Fox. When Carstens is notified to discontinue the $75 monthly payment, he shall continue the payment to McCormick at $37.50 per month until the timber licenses are sold; the aggregate of the payments made by Carstens to draw interest at six per cent per annum and to be repaid upon a sale of the property; the remaining proceeds to be paid, three-fourth to Carstens and one-fourth to Fox, less a commission of five per cent. The decree then provides that McCormick has no further interest in the property or the proceeds thereof upon a sale thereof, save in the monthly payments as above referred to. From this decree, McCormick appeals, alleging that the lower court erred, (1) in establishing the Fox contract, and (2) in depriving him of any interest in the licenses or the proceeds of a sale thereof other than the monthly payments as provided for in the decree.

Upon the first point, we shall not here review the evidence offered by either party in support of their respective contentions. We are fully satisfied that, upon that issue, the lower court announced a correct conclusion. This conclusion not only is reached upon a review of the evidence surrounding the execution of the contract, the time, place, and all attendant circumstances, but is strengthened by evidence that cannot be overlooked that the written contract is but the formal evidence of an oral agreement entered into between Fox and

McCormick at a time when there is no suggestion of McCormick's mental incapacity, and which is established by evidence of McCormick's own statements as to the character of the agreement between himself and Fox. In fact, the written contract is drawn by Bottum, who was a witness to the oral contract, from his recollection of the terms of the oral contract. We have no hesitancy in finding that, upon this record, the Fox contract is established as a binding agreement against McCormick.

Upon the second point we cannot sustain the decree. We agree with the lower court that, when McCormick sold an undivided one-half interest in these timber licenses to Carstens, he possessed only an undivided one-fourth interest, the remaining one-fourth of his original one-half being owned by Fox. Fox, however, is raising no question as to the Carstens contract. In fact, he ratifies and adopts it, conceding that, under it, Carstens holds a one-half interest in the licenses. All he is contending for is what he claims as his interest under the contract as a half owner of the interest that passed from McCormick to Carstens. The case then stands, it seems to us, just as if Fox and McCormick had joined in the sale to Carstens, since Fox adopts and ratifies the sale so far as it passes title to Carstens. We think the fault in the lower court's view is that it has overlooked the fact that, while McCormick disposed of all his interest to Carstens, he has not been paid for that interest, either on his theory of an ownership of an undivided one-half, or Fox's claim of an equal interest in this one-half. Under the Carstens contract, McCormick was paid $1,000 cash, was to receive $75 per month until the property was sold, and then was to share equally with Carstens in the net proceeds of the sales after the deductions provided for. Fox conceded that McCormick had an interest in the contract equal with his own, yet he now contends that McCormick shall receive only the $1,000 paid in cash and the aggregate of the monthly payments up to the entry of the decree, and that he (Fox) is entitled to the re-

maining consideration of the equal division of the net proceeds belonging to the one-half.

We cannot understand upon what such reasoning is based. If McCormick and Fox are equally entitled to share in the half interest originally owned by McCormick, and if Fox now assents to and ratifies the sale of this interest to Carstens, then manifestly Fox and McCormick are equally entitled to share in the consideration of that sale, and that consideration is $1,000 cash, $75 per month until the sale, and then an equal division with Carstens of one-half of the net proceeds. If McCormick has received more than he is entitled to, it is a very simple matter to charge the over-payment against his share of the net proceeds. Fox is an equal owner with McCormick and, having ratified the sale by McCormick, is then entitled to $500 out of the cash payment and to one-half of the aggregate of the $75 monthly payments. McCormick must then account to Fox for $500 and one-half of the monthly payments and, unless otherwise arranged for, McCormick's share of the net proceeds should be charged with these sums in favor of Fox, leaving the net proceeds to be divided as follows: Six-eighths to Carstens, one-eighth to Fox, and one-eighth to McCormick.

Counsel for Fox insists that, having once owned a one-fourth interest, his interest in the Carstens contract must be accounted for on that basis. That is true; but the same argument applies to McCormick's one-fourth. They entered into the Carstens contract with equal right, and they must equally share in its provisions for past, present, and future payments. Fox seems to lose sight of the fact that, while he owned one-fourth at the time of the making of the Carstens contract, one-half of his share is sold to Carstens in consideration of the cash and monthly payments, together with the payment of all the expenses and carrying charges of these timber licenses. The necessary amount to be thus paid is not stated in the record other than in this form by counsel for Carstens: "We have advanced large sums of money,"

and "He [Carstens] will have very large sums of money to advance from time to time to protect his title." Other counsel says, "Nobody else is able to finance or carry it." So it is evident that, if the Carstens contract had not been made, Fox and McCormick would have had to make a similar contract with some other person or lose their rights because of financial inability to protect them. The relative share of Fox and McCormick in the Carstens contract does not seem to have engaged much of counsel's attention in the lower court, but we find this statement by counsel for Fox: "We do not admit that Mr. Carstens is an innocent purchaser of the absolute title; simply that he has taken it under this sort of condition evidenced by his letter. So we are able to protect our equity by the suit and decree of the court upon it to one-half of Mr. Carstens' advances to Mr. McCormick." This would seem to indicate that all counsel then contended for in behalf of Fox was to share equally with McCormick in the Carstens contract, which is to our minds a correct conclusion. Fox cannot ratify and accept the benefits of the Carstens contract without assuming its burdens, and the burden is the loss of one-half of his original ownership to Carstens in consideration of the payments to be made by Carstens. Fox now desires to accept the benefits but reject the burden. This he cannot do. He cannot share with McCormick in the benefit of the sale to Carstens, but make McCormick bear all the burdens.

The judgment is therefore affirmed as to the legality of the McCormick-Fox contract, but reversed as to the interest awarded Fox in the Carstens contract; and the cause is remanded to the lower court with instructions to enter a new decree in conformity with this opinion. McCormick will recover his costs on appeal.

CROW, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.